Eric B. Brown, State Bar No. 21229
Emily T. Newcomb, State Bar No. 27639
ATWOOD, HOLSTEN, BROWN, DEAVER,
SPIER & ISRAEL LAW FIRM, P.C., L.L.O.
575 Fallbrook Blvd., Suite 206
Lincoln, NE  68521

Telephone: (402) 476-4400
Facsimile:  (402) 476-4410
Email: ebrown@atwoodlawyers.com
          enewcomb@atwoodlawyers.com

*Attorneys for Plaintiff Dee Henry*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| DEE HENRY<br><br>Plaintiff,<br><br>vs.<br><br>MUTUAL OF OMAHA INSURANCE COMPANY, UNITED OF OMAHA LIFE INSURANCE COMPANY and DISABILITY RMS,<br><br>Defendants. | CASE NO. CI 23_____<br><br><br><br>**COMPLAINT** |

COMES NOW Plaintiff, Dee Henry (hereinafter "Plaintiff"), by and through her attorneys, Eric B. Brown and Emily T. Newcomb, for her Complaint against Defendants Mutual of Omaha Insurance Company, United of Omaha Life Insurance Company, and Disability RMS, and states and alleges as follows:

*Parties*

1. At all times relevant to this action, Plaintiff has been a resident of Louisville, Cass County, Nebraska.

1

2. The information set forth below is based on Long Term Disability Plan (hereinafter "Plan") documentation provided by Disability RMS to Plaintiff's undersigned attorney's office as part of her claim file.

3. The information set forth below is also based on information provided by Disability RMS and/or Disability RMS Analyst, Lu-Ann Hodge, to Plaintiff and her undersigned attorney's office in 2021 and 2022.

4. Upon information and belief, Defendant Mutual of Omaha is a corporation doing business and headquartered in Omaha, Douglas County, Nebraska, and was at all times relevant a corporation providing Long Term Disability ("LTD") insurance to employees and responsible for Employee Retirement Income Security Act (hereinafter "ERISA") plan administration. Upon information and belief, Defendant Mutual of Omaha sponsored and fully-insured a LTD plan, which may be created to provide its employees with income protection benefits.

5. Upon information and belief, Defendant United of Omaha Life Insurance is a corporation doing business and headquartered in Omaha, Douglas County, Nebraska, and was always relevant a corporation engaged in LTD insurance and ERISA plan administration. Upon information and belief, Defendant Mutual of Omaha sponsored and fully-insured a LTD plan, which may be created to provide its employees with income protections benefits.

6. Upon information and belief, Defendants Mutual of Omaha and United of Omaha Life Insurance hired Disability RMS to administer and make claim decisions under the Plan. Disability RMS is and was at all times relevant hereto a corporation doing business in Nebraska, headquartered in South Portland, Cumberland County, Maine, and was at all times herein mentioned engaged in the administration of LTD policies for Defendants Mutual of Omaha and United of Omaha Life Insurance.

7. The Plan subject to this suit is located at and within Group Policy Number GLTD-EH0 issued from Defendant United of Omaha Life Insurance Company to Mutual of Omaha Insurance Company.

8. Defendant Mutual of Omaha's purpose in sponsoring and insuring the Plan was to provide disability insurance and income protection for its employees.

9. At all times relevant hereto, the Plan constituted an ERISA "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1).

*Venue and Jurisdiction*

10. Jurisdiction is proper under 28 U.S.C. § 1331 as this claim arises under the ERISA. 29 U.S.C. § 1001 *et seq.*; 29 U.S.C. § 1132.

11. This court has personal jurisdiction over Defendants as the claims arise out of and/or relate to Defendants' activities in the State of Nebraska, including the administration of and subsequent denial of Plaintiff's LTD benefits.

12. Venue is proper under 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2) as a substantial part of the events or omissions giving rise to the claim occurred in Nebraska.

*Exhaustion of Administrative Remedies*

13. Pursuant to 29 U.S.C. § 1133, Plaintiff timely filed an internal appeal with Disability RMS on April 22, 2022, appealing the denial subject to her Complaint.

14. From April 22, 2022, to August 10, 2022, Plaintiff submitted evidence to Disability RMS for consideration in the appeal.

15. On September 6, 2022, Disability RMS denied Plaintiff's claim for LTD benefits.

16. At least sixty (60) days has elapsed after Defendant Disability RMS has been given proof of loss.

17. As such, Plaintiff has timely filed this action after properly exhausting her administrative remedies as required by *Burds v. Union Pacific Corp.,* 223 F.3d 814 (8th Cir. 2009).

### *General Allegations*

18. Plaintiff served as Senior Vice President of Corporate Accounting for Mutual of Omaha since the beginning of 2010. The basic functions of this role is described as follows:

> As a member of the Finance Operation leadership team, reporting directly to the Chief Financial Officer, this position provides leadership and direction for the Corporate Accounting division. Oversees Corporate accounting functions to include: Accounts Payable & Expense Accounting, General Ledger, and Investment Accounting, Oversees the development, management and enhancement of the Finance Operation Systems. Ensures accuracy of information as well as full integration and standardization of process controls for accurate and efficient reporting. [] Provides strategic leadership and direction on the procurement of goods and services for the enterprise through a center led procurement model.

19. Within the job description for Senior Vice President of Corporate Accounting, Mutual of Omaha lists the following physical requirements:

   a. Key-boarding/writing/pinching (working primarily with fingers) – 1 to 33% of the time

   b. Handling (working primarily with hands such as grasping, turning, sorting) – 1 to 33% of the time

   c. Sitting – more than 66% of the time

   d. Standing/Walking – 1 to 33% of the time

   e. Talking (required use of voice) – more than 66% of the time

   f. Near vision (Visual Acuity at 20 inches or less) – more than 66% of the time

   g. Hearing – 34 – 66% of the time

   h. Travel – 1 to 33% of the time

      i.    Lifting/Carrying – 1 to 32 reps per day/ or 1 to 33% of the time

20. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and a "participant" as defined by 29 U.S.C. § 1002(7).

21. At all times relevant, Disability RMS was, and still is, the administer of Plaintiff's LTD plan through Defendants Mutual of Omaha and United of Omaha Life Insurance.

22. Plaintiff was originally diagnosed with Parkinson's disease in 2011 by her treating provider, Dr. Harris Frankel.

23. From 2011 to 2017, Plaintiff's symptoms associated with her Parkinson's disease progressed, including increased tremors, insomnia, fatigue, and loss of mental sharpness. Dr. Frankel continued to treat Plaintiff throughout this time.

24. From 2011 through 2017, Plaintiff continued to work for Defendant Mutual of Omaha.

25. On January 20, 2018, Plaintiff called Dr. Frankel and explained she was experiencing overwhelming fatigue, which had progressively worsened over the last few years and was worsened by her insomnia.

26. In a subsequent report dated February 9, 2018, Dr. Frankel noted Plaintiff suffered from a sleep disorder with resultant chronic fatigue, which was disabling. As a result, Plaintiff was suffering from cognitive and emotional distress. Dr. Frankel opined Plaintiff was unable to return to work, assigning permanent no-work restrictions.

27. Disability RMS and Mutual of Omaha approved Plaintiff to receive LTD benefits in light of her progressing Parkinson's Disease on July 24, 2018.

28. Upon information and belief, the relevant Plan definition of disability governing Plaintiff's LTD claim at this time is as follows:

*Disability* and *Disabled* mean that because of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred in which:

a) During the Elimination Period, You are prevented from performing at least one of the Material Duties of Your Regular Occupation on a part-time or full-time basis;

b) After Elimination Period, You are:

    1. Prevented from performing at least one of the Material Duties of Your Regular Occupation on a part-time or full-time basis; and
    2. Unable to generate Current Earnings which exceed 99% of Your Basic Monthly Earnings due to that same Injury or Sickness. (p. 23 of LTD Benefits Packet).

29. From 2018 to 2021, Plaintiff continued to treat with various providers, including her neurologist Dr. Frankel, her past primary care physician Dr. Kara Markin, her present primary care physician Dr. Emily Hill Bowman, psychiatrist Dr. Thomas Magnuson, psychologist Dr. Tessa Holscher, and various physical therapy providers for her disabling Parkinson's disease; her related symptoms of insomnia, fatigue, tremor, fine motor deterioration, and gait issues; and other issues of Celiac Disease and myalgias.

30. During this time, Dr. Frankel maintained Plaintiff was permanently and totally disabled.

31. From 2018 through 2021, Disability RMS continued to pay Plaintiff's LTD benefits under her policy.

32. After originally approving and reviewing Plaintiff's LTD claim, *Defendants* advised Plaintiff to apply for Social Security Disability benefits.

33. Plaintiff was denied Social Security Disability Benefits on October 22, 2019, after her counsel assigned by Defendants' failure to obtain any updated opinions from her treating providers regarding her disability status. This decision was appealed, but the administration and U.S. District Court in Nebraska upheld the denial on the record presented to it.

34. Upon information and belief, after two years of receiving LTD benefits under the Plan, the relevant disability terminology morphed for the continuation of benefits. Under the new language, it must be demonstrated that Plaintiff is unable to perform all of the Material Duties of any Gainful Occupation. In turn, those terms are identified as:

> *Material Duties* means the essential tasks, functions, and operations relating to an occupation that cannot be reasonably omitted or modified. In no event will we consider working an average of more than the required Full-Time hours per week in itself to be part of material duties. One of the material duties of Your Regular Occupation is the ability to work for an employer on a full time basis.
>
> *Gainful Occupation* means an occupation for which you are reasonably fitted by training, education or experience.

35. Upon information and belief, Defendants have defined "Sedentary Work" as follows:

> *Sedentary Work* as exerting up to 10 pounds of force occasionally or a negligible amount of force frequently to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time.

36. On September 20, 2021, Disability RMS obtained a record review from Dr. Richard Maguire, a Disability RMS Medical Consultant, who determined Plaintiff had absolutely no medical impairment due to her Parkinson's disease for which she had been diagnosed for a decade.

37. On October 6, 2021, Dr. Maguire wrote to Dr. Frankel regarding Plaintiff's claim, failing to include any of the relevant definitions of Ms. Henry's file, and asked whether Plaintiff is currently capable of performing the full-time demands of work at a Sedentary level.

38. On October 8, 2021, Dr. Frankel checked "Yes" on said checkbox form, sending it back to Disability RMS thereafter.

39. On October 26, 2021, Disability RMS terminated all benefits under Plaintiff's LTD policy moving forward.

40. Plaintiff timely appealed Disability RMS's decision.

41. During the appeal process, Plaintiff obtained opinions from her treating neurologist, Dr. Frankel, rescinding his October 8, 2021 checkbox report upon which Disability RMS relied in denying Plaintiff's LTD benefits. Dr. Frankel did so in a long and thorough narrative report, wherein he stated, "In retrospect and taking a broader view of her totality of circumstances, I regret my decision then," going on to evaluate Plaintiff's medical circumstances. Ultimately, Dr. Frankel concluded, "Upon reviewing her record and considering the collateral information provided by her husband, it is my opinion [Plaintiff] has, at a minimum, reduced functional capacity and is unable to perform sedentary work on a continuous, full-time basis now or at any time in the future. It is further my opinion she is unable to perform any type of work on even a part-time basis now or at any time in the future."

42. Plaintiff underwent an independent medical examination on March 31, 2022, with Dr. Walter Wood wherein he opined Plaintiff met the disability criteria to qualify for LTD benefits under the Plan as Plaintiff did not have the stamina to consistently perform any job where she would be required to show up every day to perform.

43. Plaintiff's past primary care physician, Dr. Kara Markin, and her present primary care physician Dr. Emily Hill-Bowman, and independent medical examiner Dr. Walter Wood all concurred with Dr. Frankel's opinions.

44. Plaintiff underwent a functional capacity evaluation on May 19, 2022, performed by Jennifer Beran, DPT, where she found Plaintiff could only perform part-time sedentary work

for up to two hours a day, five days a week, with the need for alternative sitting and standing, failing to meet the criteria set forth in the Plan.

45.     In a July 14, 2022 report, Ms. Helen Long, vocational consultant, evaluated Plaintiff's medical file and her statements and found the severe symptoms relating from Plaintiff's disease have had a detrimental effect on her working capacity, both cognitively and physically. Ms. Long concluded Plaintiff is no longer capable of carrying out the tasks of her previous career or any alternative employment in the general labor market.

46.     On appeal, as part of its review of Plaintiff's claim for LTD benefits, Defendant Disability RMS obtained medical records only paper reviews from two (2) medical professionals of its choosing, Dr. Richard Maguire and Dr. Wesley Johnson, and vocational consultant Ms. Teresa Marques, MBA, CRC. Each opined Plaintiff experienced no disability or symptoms from her progressed Parkinson's disease to prevent her from full-time sedentary employment and is able to meet the physical demands of Sedentary Work.

47.     Drs. Maguire and Johnson are in Maine along with Defendant Disability RMS, and are long-time medical consultants and medical record reviewers for Defendants and/or the disability insurance industry and have incentives to protect their own consulting relationships therewith by providing medical records only reviews and who selectively pick and choose evidence, opinions and report(s) which are favorable to Defendants and ignore evidence and recklessly and arbitrarily pick and choose evidence, opinions and reports which are unfavorable to Defendants.

48.     Basing its decision solely on the medical record paper reviews of Drs. Maguire and Johnson, Disability RMS determined to maintain its denial of Plaintiff's LTD benefits on September 6, 2022.

*Legal Standards*

49. The Court may properly weigh and consider extrinsic evidence regarding the nature, extent, and effect of *any* conflict of interest and/or of any ERISA procedural violation which may have impacted or influenced Disability RMS and Mutual of Omaha's decision to deny Plaintiff's LTD claim.

50. In denying her claim, Defendants Disability RMS, United of Omaha, and Mutual of Omaha did not provide a "full and fair" review as required by law, and its ERISA violations are so flagrant they justify a *de novo* review; and if the Court concludes the Plan or any alternative law confer discretion and the standard of review is for an abuse of discretion, Plaintiff asserts Disability RMS' decision which resulted from its conflict of interest and its numerous unlawful ERISA violations as referenced herein clearly constitute an abuse of discretion.

51. Plaintiff is entitled to discovery regarding Defendants' aforementioned procedural violations, conflict of interest, and bias. This includes, but is not limited to, Disability RMS, United of Omaha Life Insurance, and Mutual of Omaha conflicts of interest, conflicts of interest of any third party vendor hired by Disability RMS, United of Omaha, and/or Mutual of Omaha, conflicts of interest or violations of any medical professional retained by Defendants and/or any third party vendor to review Plaintiff's claim, and of *any* individual, medical professional or otherwise, who reviewed any evidence and/or participated in the review of Plaintiff's claim.

*Count One: Wrongful Denial and ERISA Violations*

52. Plaintiff hereby incorporates paragraphs 1-51 of her Complaint herein, by reference.

53. ERISA requires plans afford a reasonable opportunity for a full and fair review of dispositions adverse to claimants pursuant to *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003); 29 U.S.C. § 1133(2).

54. Plaintiff alleges she meets the "Material Duties of any Gainful Occupation" definition of disability set forth in the Plan as the evidence she submitted to Defendants, and which is contained in her claim file, supports a determination by the Court that she so meets.

55. Plaintiff seeks benefits in the form of "Material Duties of any Gainful Occupation" LTD benefits from the Plan pursuant to § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), as well as any other non-disability benefits she may otherwise be entitled to.

56. Plaintiff asserts Defendants' Disability RMS, United of Omaha Life Insurance Company, and/or Mutual of Omaha's review was neither full nor fair in violation of 29 U.S.C. § 2560.503-1, was an abuse of discretion, and violative of Plaintiff's rights for reasons including, but not limited to:

   a. Failing to credit Plaintiff's reliable medical opinions, including those of her treating neurologist, current family practitioner, past family practitioner, in-person independent medical examiner, the functional capacity evaluation, vocational rehabilitation specialist, sworn statements of Plaintiff and Plaintiff's husband, and the full records provided by Plaintiff in this action;

   b. Failing to have Plaintiff's claim reviewed by truly independent medical professionals, instead basing its denials on medical records only paper reviews;

   c. Failing to have Plaintiff's claim reviewed by an appropriate medical professional who had relevant medical expertise and training as required by ERISA and 29 C.F.R. § 2560.503-1(h)(3), 3(iii);

    d.  Having Plaintiff's claim reviewed by the same medical professionals at two separate levels of review in violation of ERISA and 29 C.F.R. § 2560-503-1(h)(3)(v);

    e.  Failing to obtain an in-person Independent Medical Examination and/or a Functional Capacity Evaluation to assess Plaintiff's disability more accurately than basing denial solely off of limited record reviews;

    f.  Providing biased and one-sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by her and/or by de-emphasizing medical or other evidence which supported Plaintiff's claim and its approval;

    g.  Disregarding and/or failing to consider Plaintiff's disabling subjective and self-reported complaints, symptoms, and limitations;

    h.  Failing to consider the combined effect of all of Plaintiff's medical conditions and resulting limitations documented in her medical evidence would have on her ability to work in any occupation, especially considering an inherently progressive disease such as Parkinson's; and

    i.  Failing to properly and adequately investigate Plaintiff's claim and obtain the medical records it should have known were missing from her claim file.

    j.  Unsurprisingly and as expected, Plaintiff's physical condition continues to deteriorate to this day.

57.  In evaluating Plaintiff's claim on appeal, Defendants owed her a fiduciary duty, and Defendants had an obligation pursuant to ERISA to administer the Plan "solely in [her] best interests and other participants," which it failed to do. *See* 29 U.S.C. § 1104(a)(1); *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (U.S. 2008).

58. As a direct result of Defendant Mutual of Omaha, United of Omaha Life Insurance, and Disability RMS' decision to deny Plaintiff's LTD claim, she has been injured and suffered damages in the form of lost LTD benefits, in addition to other potential non-disability employee benefits she may be entitled to receive through or from the Plan, from any other Mutual of Omaha Plan and/or Mutual of Omaha as a result of being found disabled in this matter.

WHEREFORE, Plaintiff, Dee Henry, prays for judgment against Defendant Disability RMS, Mutual of Omaha, and United of Omaha Life Insurance as follows:

A. For an Order finding that evidence in Plaintiff's LTD claim is sufficient to prove she meets the "Material Duties of any Gainful Occupation" definition of disability set forth in the Plan, and Plaintiff is entitled to these long-term disability benefits, and any other non-disability employee benefits she might be entitled to as a result of that Order, from the date she was first denied these benefits through the date of judgment with prejudgment interest thereon at Nebraska's legal rate of 5.981%, the legal rate enacted at the time of judgment, or at such other rate as is appropriate to compensate her for the losses she has incurred as a result of Defendants' nonpayment of benefits;

B. For an Order directing Defendants to continue paying Plaintiff the aforementioned LTD benefits until such a time as she meets the conditions for the termination of benefits;

C. For an Order granting Plaintiff any and all employee benefits, including but not limited to disability benefits and any other benefit she may be entitled to and due from Defendants as a result of being found disabled in this matter;

D. Alternatively, if the Court determines Plaintiff meets the "Material Duties of any Gainful Occupation" definition of disability in the Plan for that entire timeframe, but the Court

declines to or is unable to make a "Material Duties of any Gainful Occupation" disability determination for any reason, then Plaintiff seeks an Order remanding her LTD claim to Disability RMS' Plan Administrator for an administrative review where she can submit new and additional evidence so the Disability RMS Plan Administrator may determine she meets the "Material Duties of any Gainful Occupation" definition of disability in the Plan; especially given the continued inherently progressive nature of Parkinson's disease.

      E.      For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. § 1132(g); and

      F.      For such other and further relief as the Court deems just and proper.

### *Count Two: Conflicts of Interest*

59. Plaintiff hereby incorporates paragraphs 1-58 of her Complaint herein, by reference.

60. A palpable conflict of interest and/or serious procedural irregularity exists in Disability RMS' administration and subsequent review of Plaintiff's LTD plan and benefits. These multiple conflicts of interest exist in the review and denial of Plaintiff's claims, including, but not limited to:

    a. Plaintiff served as a high-ranking and highly-compensated Officer with Mutual of Omaha. Plaintiff's LTD plan was through United of Omaha Life Insurance which lists Mutual of Omaha as a registered agent, her employer prior to going on LTD benefits, leading to a palpable conflict of interest;

    b. Pursuant to the relevant ERISA regulations, Mutual of Omaha and/or United of Omaha Life Insurance Company may not have made a proper delegation or

      properly vested fiduciary authority or power for claim administration in Disability RMS;

    c. Upon information and belief, Mutual of Omaha, United of Omaha Life Insurance Company, and/or Disability RMS may have also operated under a structural financial conflict of interest in that they may have assumed dual roles as the claim's administrator, payer of benefits, and employer; *to wit*, if one of the aforementioned entities approved Plaintiff's claim, then one or both of those entities was also liable for the payment of benefits; and

    d. Due to their longtime relationship with the disability insurance industry, Drs. Maguire and Johnson have conflicts of interest and incentives to protect their own consulting relationships with Defendants and/or the disability insurance industry by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim to provide opinions and report(s) which are favorable to insurance or administrative companies such as Defendants, and which unreasonably supported the denial of Plaintiff's claim;

61. This conflict of interest caused a serious breach of the plan administrator's fiduciary duty to Plaintiff.

WHEREFORE, Plaintiff, Dee Henry, prays for judgment against Defendant Disability RMS, Mutual of Omaha, and United of Omaha Life Insurance as follows:

    A. For an Order finding that evidence in Plaintiff's LTD claim is sufficient to prove she meets the "Material Duties of any Gainful Occupation" definition of disability set forth in the Plan, and Plaintiff is entitled to these long-term disability benefits, and any other non-disability employee benefits she might be entitled to as a result of that Order, from the date she was first

denied these benefits through the date of judgment with prejudgment interest thereon at Nebraska's legal rate of 5.981%, the legal rate enacted at the time of judgment, or at such other rate as is appropriate to compensate her for the losses she has incurred as a result of Defendants' nonpayment of benefits;

  B. For an Order directing Defendants to continue paying Plaintiff the aforementioned LTD benefits until such a time as she meets the conditions for the termination of benefits;

  C. For an Order granting Plaintiff any and all employee benefits, including but not limited to disability benefits and any other benefit she may be entitled to and due from Defendants as a result of being found disabled in this matter;

  D. Alternatively, if the Court determines Plaintiff meets the "Material Duties of any Gainful Occupation" definition of disability in the Plan for that entire timeframe, but the Court declines to or is unable to make a "Material Duties of any Gainful Occupation" disability determination for any reason, then Plaintiff seeks an Order remanding her LTD claim to Disability RMS' Plan Administrator for an administrative review where she can submit new and additional evidence so the Disability RMS Plan Administrator may determine she meets the "Material Duties of any Gainful Occupation" definition of disability in the Plan;

  E. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. § 1132(g); and

  F. For such other and further relief as the Court deems just and proper.

Dated this 27th day of February, 2023.

DEE HENRY, Plaintiff.

By: _____
ERIC B. BROWN, NSBA #21229
EMILY T. NEWCOMB, NSBA #27639
ATWOOD, HOLSTEN, BROWN,
DEAVER, SPIER & ISRAEL
LAW FIRM, P.C., L.L.O.
575 Fallbrook Blvd, Suite 206
Lincoln, NE  68521
Telephone: 402.476.4400
Facsimile: 402.476.4410
ebrown@atwoodlawyers.com
enewcomb@atwoodlawyers.com
ATTORNEYS FOR PLAINTIFF